UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>A.N. FRIEDA, INC.<br><br>                    Debtor. | Chapter 7<br><br>Case No. 15-11862 (MEW) |
| MATTHEW C. HARRISON, JR.,<br><br>                    Trustee-Plaintiff<br><br>-against-<br><br>RONEN KONFINO, FRIEDA KONFINO<br>RONI RUBINOV, NEW LIBERTY PAWN<br>SHOP, INC., NEW YORK ESTATE BUYERS<br>and ABNER RUBINOV a/k/a AVNER<br>RUBINOV,<br><br>                    Defendants,<br><br>And<br><br>VNB NEW YORK, LLC<br><br>                    Defendant-Intervenor. | Adv. Pro. No. 17-01103 (MEW) |

**POST-TRIAL MEMORANDUM OF LAW**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

#1036758

VNB New York, LLC ("VNB"), by its attorneys, Zeichner Ellman & Krause LLP, submits this post-trial Memorandum of Law requested by the Court.

## I. Questions posed by the Court

The Court requested post-trial briefs on two issues:

1. Was an alleged private sale (the "Sale") of certain diamonds (the "Diamonds") by Roni Rubinov and New Liberty Pawn Shop (the "Roni Parties") permitted under New York law and the terms of the pawn ticket/contract?

2. Was the sale effective and commercially reasonable?

The Court heard conflicting evidence from Roni and Avner Rubinov on the circumstances of the Sale and whether it occurred at all. Notwithstanding the Court's determination on this and the questions above, the facts show the Roni Parties and Avner Rubinov ("Avner") and New York Estate Buyers ("New York Estate" and collectively with Avner, the "Avner Parties") are liable to VNB for conversion and/or aiding and abetting conversion. The Roni Parties and the Avner Parties shall be referred to collectively as "the Rubinov Parties."

## II. The Sale

On July 16, 2015, three creditors filed an involuntary bankruptcy against A.N. Frieda Diamonds, Inc. (the "Debtor"). New Liberty alleges that at that time, it was owed $1,005,033. Prior to that, on July 9, 2015, New Liberty sent default letters to "Ronen Konfino/A.N. Frieda," providing notice of New Liberty's intent to sell the Diamonds pledged to it at the Sale after thirty

days. Trial Exhibit DXC.[1] The Roni Parties alleged that in August and September 2015, the Diamonds were sold to New York Estate for a total of $1,037,333 (the "Sale Price") under five purchase orders (the "Purchase Orders") to New York Estate. Trial Exhibits PX 8-12. At the trial, Roni Rubinov testified that the loans at issue were made at 80% of the value of the Diamonds, but an expert witness, Harold Dombrat, testified that the pawnbrokers often loan at 50% of the value of the collateral. Avner denies he or New York Estate purchased the diamonds.

### III. Was a private sale permitted?

New York law permits a public or private sale of defaulted pledges of diamonds by a collateral loan broker. New York General Business Law, Collateral Loan Brokers, § 48(2). Although an argument may be made that the terms of the Pawn Tickets limit sales of diamonds subject thereto to public auction sales, the Court need not reach this issue because the sale was not effective or commercially reasonable.

### IV. Was the Sale effective and commercially unreasonable?

Section 48(2)(b) of the N.Y. GBL states:

> A private sale may be at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable and conducted in conformity with applicable uniform commercial code ("UCC") provisions regarding the disposal of collateral after default.

---

[1] The Diamonds were pledged as pawns on various dates in 2014 and 2015. Roni Rubinov has incorrectly argued in prior papers that these pawns are protected under GBL § 44(3), but that statute was enacted to protect pawnbrokers from faithless agents. Modell v. Morgenthau, 196 Misc.2d 354, 764 N.Y.S.2d 779, 786 (Sup. Ct. N.Y. Cty. 2003) ("legislative history of GBL § 44(3) reveals that this provision was enacted and amended for the purpose of protecting pawnbrokers, like bona fide purchasers, from "faithless agents"). In this case, the Debtor's principal, Konfino cannot be a "faithless agent;" – he cannot be faithless to himself. New Liberty and Roni Rubinov also did not act in good faith. The pawn tickets listed Konfino and the Debtor, but the Roni Parties performed no search of the Debtor's possible other creditors such as VNB. Later, they failed to give VNB notice of the Sale in violation of the UCC.

A. **Failure to provide notice makes the sale defective**

Section 9-611 of the New York UCC states: "a secured creditor that disposes of collateral under Section 9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition." VNB falls within the definition of Section 9-611(c)(3)(B), which includes:

> any other secured party or lienholder that, 10 days before the notification date, held a security interest in or other lien on the collateral perfected by the filing of a financing statement that:
>
> (i) identified the collateral;
>
> (ii) was indexed under the debtor's name as of that date; and
>
> (iii) was filed in the office in which to file a financing statement against the debtor covering the collateral as of that date;

VNB demonstrated its status as a secured creditor through submission of Exhibit CCX1 and the testimony of Joseph Radice. There is also no dispute the Roni Parties failed to give notice of the Sale to VNB.

B. **The Sale was not commercially reasonable**

NYUCC 9-610 provides in part:

> (a) Disposition after default. After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.
>
> (b) Commercially reasonable disposition. Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral

3

> by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.[2]

The Sale has all the earmarks of a commercially *un*reasonable sale: The method of sale was suspect because it was a private sale to an insider. The Sale price was not reasonable because it was well below the market value of the Diamonds, whether the loans were made at 80% of value (approximately $1.2 million) or 50% of value (approximately $2 million). The notice of the Sale was also deficient, because no notice was given to VNB.

### C. All the Rubinov Parties remain liable for conversion and/or aiding and abetting conversion

The defects of the Sale do not affect the liability to VNB of any of the Roni Parties and the Avner Parties for conversion and/or aiding and abetting conversion.

1. **The Roni Parties'** conversion occurred at the time New Liberty accepted the Diamonds as pawns in violation of VNB's security interest, and their subsequent actions in foreclosing and selling the Diamonds, even after notice of the bankruptcy, affirms their liability.

2. **The Avner Parties** are liable whether or not the Court determines the Sale occurred or was commercially reasonable.

---

[2] In prior papers, the Roni Parties selectively cited the comments to Section 9-610 of the UCC. Comment (5) to 9-610 states in part, "The exercise of [the right to dispose of collateral] by a secured party whose security interest is subordinate to that of another secured party does not of itself constitute a conversion. Opp. Memo, p. 22 (Emphasis in Opp. Memo.). But the next paragraph of Comment (5), not cited by the Liberty Parties, states in part: The holder of a senior security interest is entitled, by virtue of its priority, to take possession of collateral from the junior secured party and conduct its own disposition, provided that the senior enjoys the right to take possession of the collateral from the debtor. See Section 9-609. The holder of a junior security interest normally must notify the senior secured party of an impending disposition. See Section 9-611. As set forth below, the New Liberty parties were required to notify VNB of the sale under that section and did not.

4

**a. If the Sale occurred:**

A buyer cannot be a buyer in the ordinary course if it ignores certain "red flags" when it makes the purchase. *Blue Riv. Gems Inc. v S.V. & V. Diamond Corp.*, 55 Misc. 3d 450, 47 N.Y.S.3d 860, 863 (N.Y. County 2016). These can include:

> (1) whether the sale price is obviously below market, (2) whether the negotiations or procedure of the sale differed from previous transactions between buyer and seller, (3) whether the buyer was aware of the seller's financial difficulties, or (4) whether the buyer would have reason to doubt the seller's ownership.

*Id.* Here, the Sale was below market value because it was barely above the loan amount, despite evidence the value was between 20% and 50% higher than the loan. See p. 2, *supra*. Avner testified he was aware of the Roni Parties' financial difficulties, including an unpaid loan to Roni. Avner also testified that Ronen Konfino had misrepresented that stones he presented were diamonds, when they were not.

Testimony also shows the Avner Parties cannot be "buyers in the ordinary course." The UCC definition of a buyer in the ordinary course specifically excludes a person who acquires goods in "partial satisfaction of a money debt." NYUCC § 1-201(b)(9). If the Court finds a Sale occurred, Roni's testimony that most of the Sale price was unpaid, coupled with Avner's testimony that Roni owed him a debt supports a conclusion that NY Estate and Avner obtained the Diamonds in partial support of Roni's debt to Avner.

NYUCC § 1-201(9) also specifically excludes sales from pawnbrokers from "buyer in the ordinary course" status. For the above reasons, the Avner Parties do not have the protection of a buyer in the ordinary course under NYUCC §9-320. And the Sale is subject to VNB's prior

security interest. *Fin. Fed. Credit Inc. v. Teplitz Auto Parts, Inc.*, 2007 U.S. Dist. LEXIS 61452 *18 (S.D.N.Y. 2007)

### b. If the Sale did not occur:

Even if the Court concludes a sale to New York Estate did not occur, the Avner Parties admit sales of the Diamonds occurred, and Avner assisted Roni with the sales. This is sufficient to find Avner aided and abetted Roni's further conversion of the Diamonds.

Dated: November 13, 2019
      New York, New York

                                      **ZEICHNER ELLMAN & KRAUSE LLP**
                                      Counsel to VNB New York LLC

By: _____
                Peter Janovsky, Esq.
                Stephen F. Ellman, Esq.
                1211 Avenue of the Americas
                New York, New York 10036
                Telephone: (212) 826-5339