UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>A.N. FRIEDA, INC.<br><br>                    Debtor. | Chapter 7<br><br>Case No. 15-11862 (MEW) |
| MATTHEW C. HARRISON, JR.,<br><br>                    Trustee-Plaintiff<br><br>-against-<br><br>RONEN KONFINO, FRIEDA KONFINO RONI RUBINOV, NEW LIBERTY PAWN SHOP, INC., NEW YORK ESTATE BUYERS and ABNER RUBINOV a/k/a AVNER RUBINOV,<br><br>                  Defendants,<br><br>And<br><br>VNB NEW YORK, LLC<br><br>                  Defendant-Intervenor. | Adv. Pro. No. 17-01103 (MEW)<br><br>**STIPULATION AND ORDER** |

        IT IS HEREBY STIPULATED AND AGREED, by and between Matthew C. Harrison, Trustee (the "Trustee") of the Chapter 7 Bankruptcy Estate of A.N. Frieda Diamonds, Inc. (the "Debtor") and VNB New York, LLC ("VNB"), by their undersigned attorneys, that

        WHEREAS, the Debtor was in the diamond business, with premises located at 580 Fifth Avenue, New York, NY 10036. It ceased doing business in or about July 2015; and

WHEREAS, an involuntary petition was filed against the Debtor on July 16, 2015 (the "Petition Date") under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York; and

WHEREAS, as of the Petition Date, the Debtor's indebtedness to VNB was $1,846,522.07 (the "VNB Claim") as more particularly set forth in a proof claim filed with this Court (the "VNB Proof of Claim"); and

WHEREAS, on September 9, 2015, the Court entered an Order for Relief, and on or about November 12, 2015, the Trustee was elected Chapter 7 Trustee for the Bankruptcy Estate of the Debtor; and

WHEREAS, the VNB Claim is secured by a security interest in the assets of the Debtor as more particularly described in the security agreements, UCC filings; and other loan documents (the "Loan Documents"); and

WHREAS, VNB's security interest includes all personal property of the Debtor, including all inventory, accounts receivable and other property (the "VNB Collateral"); and

WHEREAS, payment of Debtor's obligations to VNB were guaranteed in writing by each of Ronen Konfino and Frieda Konfino (collectively, the "Guarantors"); and

WHEREAS, VNB obtained judgments against each of the Guarantors in the Supreme Court, New York County (the "NY Guarantor Judgments"); and

WHEREAS, VNB also obtained judgments against each of the Guarantors in Israel (the "the Israel Guarantor Judgments"); and

WHEREAS, the Israel Guarantor Judgments attached to proceeds of a foreclosure sale of the Guarantors' home in Israel (the "Israel Residence"), and $603,800 was distributed to VNB from those proceeds (the "VNB Israel Payment"); and

WHEREAS, the VNB Israel Payment reduced the amount of the VNB claim to $1,242,722.07.

WHEREAS, the NY Judgments and the Israel Guarantor Judgments shall be referred to collectively herein as the "VNB Judgments."

WHEREAS, the above captioned adversary proceeding was commenced on August 2, 2017 (the "Trustee Proceeding"), when the Trustee filed a Summons and Complaint against Ronen Konfino, Frieda Konfino (collectively, the "Konfinos"); Roni Rubinov and New Liberty Pawnshop, Inc. ("New Liberty") (collectively, the "Roni Rubinov Parties"); and Abner Rubinov, a/k/a Avner Rubinov and New York Estate Buyers ("NY Estate") (collectively, the "Avner Rubinov Parties"); and

WHEREAS, the Trustee Proceeding seeks recovery under, *inter alia*, 11 U.S.C. § 549, from the Roni Rubinov Parties and the Avner Rubinov Parties of, *inter alia*, inventory pawned at New Liberty (the "Rubinov Pawns") and the proceeds thereof, including subsequent transfers of the Rubinov Pawns to third parties, including the Avner Rubinov Parties (the "Trustee Rubinov Claims"); and

WHEREAS, by Order dated October 2, 2017 (Dkt. 18), the Court granted VNB's motion to intervene as a defendant/counterclaimant/cross-claimant and file a summons for Cross-Claims in the Proceeding; and

WHEREAS, on October 9, 2017, VNB filed its Answer, Counterclaims and Cross-claims (the "VNB Pleading"), and a request for a summons on the cross-claims. (Dkt. 21.); and

WHEREAS, the VNB Pleading asserts Counterclaims against the Trustee for (a) a declaratory judgment that VNB's first priority security interest in the VNB Collateral, including the Rubinov Pawns and any other VNB Collateral or their proceeds, has priority over any claims by the Trustee or unsecured creditors; and (b) turnover to VNB of any property subject to VNB's secured claim.; and

WHEREAS, the VNB Pleading also asserts Cross-claims against Roni Rubinov and Avner Rubinov each for conversion and aiding and abetting conversion (the "VNB Rubinov Cross-claims"); and

WHEREAS, any judgment in this proceeding allocable to the Trustee RubinovClaims shall be referred to as the "Trustee Rubinov Judgment;" and

WHEREAS, any judgment in this proceeding allocable to the VNB Rubinov Cross-Claims shall be referred to as the "VNB Rubinov Judgment" and

WHEREAS, any judgment not allocable to the Trustee Claims or the VNB Cross- Claims shall be referred to as the "Non-allocated Judgment"); and

WHEREAS, the total of the Trustee Rubinov Judgment and the VNB Rubinov Judgment shall be referred to as the "Total Rubinov Judgment"; and

WHEREAS, the "Trustee Rubinov Percentage" shall be equal to the Trustee Rubinov Judgment divided by the Total Rubinov Judgment; and

WHEREAS, the "VNB Rubinov Percentage" shall be equal to the VNB Rubinov Judgment divided by the Total Rubinov Judgment; and

4

WHEREAS, in the event the Court enters a Non-allocated Judgment, the Trustee Rubinov Percentage and the VNB Rubinov Percentage shall each equal fifty percent (50%); and

WHEREAS, in the event the Court enters an Allocated and a Non-Allocated Judgment, (a) the Trustee Rubinov Percentage shall be equal to (i) the Trustee Rubinov Judgment plus fifty percent (50%) of the Non-Allocated Judgment, divided by (ii) the Total Rubinov Judgment plus fifty percent (50%) of the Non-Allocated Judgment; and (b) the VNB Rubinov Percentage shall be equal to (i) the VNB Rubinov Judgment plus fifty percent (50%) of the Non-Allocated Judgment, divided by (ii) the Total Rubinov Judgment plus fifty percent (50%) of the Non-Allocated Judgment; and

WHEREAS, Ronen Konfino and Frieda Konfino each defaulted in answering the complaint filed in the Proceeding, and the Trustee obtained default judgments against each of them in the amount of $3,761,000 (the "the Trustee's Konfino Judgments"); and

WHEREAS, any funds or property collected by the Trustee in the United States, Israel or any other country on the basis of the Trustee's Konfino Judgments shall be referred to herein as the "Trustee's Konfino Proceeds"); and

WHEREAS, the Trustee has also commenced an adversary proceeding, *Trustee v. Friend & Co.* Adv. No. 17-01121 (the "Friend Proceeding") against Friend & Company ("Friend"), for collection of accounts receivable the Trustee alleges Friend owes the Debtor; and

WHEREAS, apart from the Friend Proceeding, Friend has returned to the Trustee approximately $75,000 of diamonds belonging to the Debtor and previously consigned to Friend (the "Friend Diamonds Proceeds"), which are currently held in a safety deposit box at Valley National Bank in the name of the Trustee; and

5

WHEREAS, the Trustee has collected (a) $213,000 (the "Kaminski Proceeds") and $169,000 (the Y. Z. Proceeds") in connection with actions brought pre-petition by the Debtor and Ronen Konfino; and

WHEREAS, the Trustee has commenced preference actions against other parties estimated to yield approximately $38,000 in recoveries (the "Preference Recoveries"); and

WHEREAS, Frieda Konfino has filed bankruptcy in Israel (the "Frieda Bankruptcy"), and VNB has filed a claim in the Frieda Bankruptcy for NIS 8,592,127.36 (approximately $2,472,483.46) (the "Israel Bankruptcy Claim")[1]; and

WHEREAS, any recoveries from the VNB Israel Bankruptcy Claim shall be referred to as the "Israel Bankruptcy Proceeds"), and do not include the VNB Israel Payment; and

WHEREAS, the total of the Y.Z. Proceeds, the Kaminski Proceeds, the Preference Recoveries, the Trustee's Konfino Proceeds, the Friend Diamonds Proceeds and the Israel Bankruptcy Proceeds shall be referred to herein as the "Non-Rubinov Proceeds"; and

WHEREAS, the Trustee expects to incur administrative expenses related to Trustee's commissions, and the professional fees and expenses of the Trustee's counsel and accountant (the "Professional Expenses") and additional priority claims under §507 of the Bankruptcy Code (collectively with the Professional Expenses (" Section 507 Expenses")).

NOW THEREFORE,

---

[1] The Israel Bankruptcy Claim includes charges for interest and attorney's fees and expenses after July 15, 2015, which are not recoverable in this case, but may be in Israel.

1. The recitals set forth above are expressly incorporated herein and the Parties acknowledge the accuracy thereof.

2. The VNB Claim, as amended under the terms of this Stipulation and Order, is a valid, perfected, first-priority secured claim in the amount of $1,242,722.07.

3. VNB shall retain the VNB Israel Payment free and clear of any claim or interest of the Trustee.

4. Subject to the terms of this Stipulation and Order, VNB assigns to the Trustee all its right, title and interest in and to the VNB Claim, the VNB Rubinov Proceeds, the NY VNB Guarantor Judgments, the Israel Guarantor Judgments, and the Israel Bankruptcy Claim, and shall contemporaneously execute and deliver to the Trustee an agreement or agreements of assignment in form and substance acceptable to the parties (the "Assignments"). The Trustee's counsel will hold the Assignments in escrow pending Court approval of this Stipulation and Order.

5. Any collections from the Rubinovs, by settlement or otherwise, shall be referred to as the "Rubinov Proceeds."

6. For purposes of distribution to unsecured creditors and VNB, the Section 507 Expenses shall be allocated 50% to the Rubinov Proceeds and 50% to the Non-Rubinov Proceeds. The Rubinov Proceeds less 50% of the Section 507 Expenses shall be referred to as the "Net Rubinov Proceeds," and the Non-Rubinov Proceeds, less 50% of the Section 507 Expenses shall be referred to as the "Net Non-Rubinov Proceeds."

7. The provisions of § 507 shall govern the payments and priority of distribution to the Section 507 Expenses.

8. The Net Rubinov Proceeds shall first be multiplied by (a) the Trustee Rubinov Percentage to yield the "Net Trustee Rubinov Proceeds;" and (b) the VNB Rubinov Percentage to yield the "Net VNB Rubinov Proceeds."

9. After Court approval of an order awarding the Section 507 Expenses (the "Expense Order"), the Trustee shall make simultaneous distributions of (i) the Section 507 Expenses as set forth in the Expense Order, and (ii) as follows:

    a. Sixty-five percent (65%) of the Net VNB Rubinov Proceeds to VNB and thirty-five percent (35%) of the Net VNB Rubinov Proceeds to the Bankruptcy Estate. Except as provided in this Stipulation and Order, VNB's claims shall not share in the distribution of the Bankruptcy Estate.

    b. Thirty-six and a half percent (36.5%) of the Net Trustee Rubinov Proceeds to VNB and sixty-three and a half percent (63.5%) of the Net Trustee Rubinov Proceeds to the Bankruptcy Estate. Except as provided in this Stipulation and Order, VNB's claims shall not share in the distribution of the Bankruptcy Estate.

    c. Twenty-seven percent (27%) of the Net Non-Rubinov Proceeds to VNB and seventy-three percent (73%) of the Net Non-Rubinov Proceeds to the Bankruptcy Estate. Except as provided in this Stipulation and Order, VNB's claims shall not share in the distribution of the Bankruptcy Estate.

    d. VNB's total distributions in (a), (b) and (c) above shall not exceed $460,000. (the "Total VNB Payments"). Any amounts in excess of $460,000 shall be distributed to the Bankruptcy Estate. Except as

8

provided in this Stipulation and Order, VNB's claims shall not share in the distribution of the Bankruptcy Estate.

10. No Court order other than this Order shall be required for the distributions in paragraphs 8(a)-(d) above.

11. Upon a final non-appealable order of the Court approving of this Stipulation and Order (the "Final Order"), (a) the Trustee hereby releases and discharges VNB, its respective current and former officers, directors, managers, shareholders, members, trustees, representatives, employees, agents, predecessors, successors and assigns (the "VNB Parties"), from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever in law, admiralty or equity, which against the VNB Parties the Trustee now has or hereafter can, shall or may have for, upon, or by reason of any claim, matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Agreement, concerning the subject matter of this Stipulation and Order.[2]

12. VNB hereby releases and discharges the Trustee from all claims against the Trustee, and his heirs, representatives, successors and assigns (the "Trustee Parties") from any and all accounts, actions, agreements, bonds, bills, causes of action, claims, contracts, controversies, covenants, damages, debts, dues, executions, expenses, extents, judgments, proceedings, promises, reckonings, specialties, suits, sums of money, trespasses, variances, and demands whatsoever, in

---

[2] Provided, however, that VNB has not previously transferred any of the claims and rights being assigned to the Trustee to any third party, and the Trustee may commence and continue any litigation and claims against any third party (other than VNB) asserting any claims whatsoever arising from (a) any actions or acts of the Debtor, (b) any acts or actions contemplated or provided under 28 U.S.C. § 157, or 28 U.S.C. § 1334, or (c) any other law which may provide for the assertion by the Trustee of claims.

9

law, admiralty or equity, which against the Trustee Parties and their predecessors, successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this Release, concerning the subject matter of this Stipulation and Order.

13. Should the Court decline to approve the Stipulation, the Stipulation shall have no force or effect and the claims between the Trustee and VNB shall remain outstanding as of the date of execution of this Stipulation.

14. This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and shall be binding on any party executing this Stipulation, all of which shall constitute one and the same document. Signatures delivered by electronic mail or facsimile shall have the same force and effect as those original signatures.

15. This Stipulation shall be governed by and construed under applicable federal law and/or the laws of the State of New York.

16. This Stipulation may not be amended or modified other than in writing executed by the Trustee and VNB.

17. This Stipulation sets forth the entire agreement between the Trustee and VNB and fully supersedes any and all prior agreements and understandings, written or oral, between the Trustee and VNB pertaining to the subject matter hereof.

18. This Stipulation shall be binding upon the Trustee and VNB, their respective heirs, executors, successors, administrators and assigns.

19. The Court may retain jurisdiction to determine any dispute which may arise under the terms of this Stipulation.

Dated: April 23, 2020
      New York, New York

**ZEICHNER ELLMAN & KRAUSE LLP**
Counsel to VNB

By:   /s/ Peter Janovsky

    Peter Janovsky, Esq.
    1211 Avenue of the Americas
    New York, New York 10036
    Telephone: (212) 826-5339


**LEO FOX, ESQ.**
Counsel to the Chapter 7 Trustee

By:   /s/ Leo Fox
    Leo Fox, Esq.
    630 Third Avenue
    New York, NY 10017
    (212) 867-9595

#1035251